2026 JUL 25 AM 8:04
BARNSTABLE TOWN CLERK

# Town of Barnstable
## Zoning Board of Appeals
## Decision and Notice

A TRUE COPY ATTEST
Town Clerk
BARNSTABLE

**Property Address:** 460 West Main Street, Hyannis, MA
**Case Number:** Appeal No. 2026-010 (Administrative Appeal)
**Appellant:** Maria R. Walsh, Trustee of Mias Family Trust
**Property Owner:** Asclepius Corp.
**Owner Address:** 255 Independence Drive, Hyannis, MA
**Assessor's Map/Parcel:** 269/030
**Zoning:** Residence B (RB) and Highway Business (HB)
**Hearing Date:** July 22, 2026
**Decision:** To overrule the Building Commissioner's issuance of Building Permit BLDC-25-316

### LEGAL NOTICE

Maria R. Walsh, Trustee of Mias Family Trust, appealed an Administrative Official's decision. The Appellant is appealing the Building Permit No. BLDC-25-316 dated April 6, 2026 which permits an emergency overnight shelter as a nonconforming use pursuant to 40A, §3 at 460 West Main Street, Hyannis. The subject property is located at 460 West Main Street, Hyannis, MA as shown on Assessor's Map 269 as Parcel 030. It is located in the Residence B (RB) and the Highway Business (HB) Zoning Districts.

### RECORD OF PROCEEDINGS

On June 10, 2026, the Zoning Board of Appeals opened a public hearing duly advertised in accordance with G.L. c. 40A and voted to continue the public hearing to July 22, 2026 to a larger venue to accommodate the number of people present. On July 22, 2026, the Board resumed the public hearing. Present and sitting at the public hearing were Board Members Jacob Dewey, Herbert Bodensieck, Paul Pinard, Aaron Webb, Manny Alves and Alternate Board Members Larry Hurwitz and Debra Dworkis. Board Members Jake Dewey, Herbert Bodensiek, Paul Pinard, Aaron Webb, and Manny Alves were assigned to decide the appeal.

Assistant Town Attorney Jan Kendrick gave the Board an overview of the administrative appeal and explained that the issue before the Board is whether the Building Commissioner erred in issuing a building permit for construction of an emergency overnight shelter in the RB/HB zoning district where a homeless shelter is not a permitted use. She said the Building Commissioner's decision to issue the building permit for the nonconforming emergency overnight shelter was based on his determination that the shelter was an exempt use under the Dover Amendment. She then provided an overview of the Dover Amendment and deferred to the attorneys representing the parties to the appeal.

Attorney Dan Creedon, representing the Appellant Maria Walsh, explained that a Dover proponent must establish that two criteria are met. He argued that the proposed homeless shelter failed under the second criteria, which is whether a religiously significant goal is the primary and dominant purpose of the use. He argued that religious motivations and doctrinal views do not transform a secular use into one that is primarily and dominantly religious purposes. He argued that the

emergency shelter is not a primarily and dominantly religious use because it does not articulate a religion and is not collocated on a property with an inherently religious use. He said courts have said that the focus is on the use and not the religious motivations of the sponsor. He said this case is different from a recent land court case where a judge said that a shelter that was located inside a church and shared space with the church was accessory to a religious use and explained the court's reasoning.

Attorney Eliza Cox, representing Catholic Charities and Housing Assistance Corp, said that the issue is not whether the location is good or bad or whether there will be negative impacts or not. The issue before the Board is a narrow legal issue. The Board is asked to determine a specific legal question—whether the Building Commissioner correctly applied state law that Catholic Charities proposed shelter is exempt under Dover. She stated that Catholic Charities proposes to relocate the shelter and provide day programs, healthcare, and case management.

She agrees with the appellant that the shelter is not accessory to an existing religious use. She reviewed the Dover Amendment and said it requires a 2-prong test. She said the primary and dominant purpose of the shelter is to allow clergy and parishioners to exercise their faith. The act of providing shelter is a form of worship and protected under the Dover Amendment. Susan Mazarella, Chief Executive Officer of Catholic Charities spoke. She spoke of the need to relocate the shelter to assist the homeless. Catholic Charities has been in service for 100 years and they are an exempt use. Saint Josephs is one of 5 shelters they operate and has a day program, case management, and social activities. At the heart of this charity is food, shelter, clothing to serve the needy. She stated housing is a basic human right and the relocation will provide safety, accessibility, support and compassion. Thomas Washburn, a Catholic Priest, said the proposed use does fall under the Dover Amendment and stated that welcoming the homeless is part of their religion and an act of worship. Attorney Valerie Moore, stated that housing the unhoused is key to their religion and stated under the Dover Amendment the issue is motivation. Here the motivation is religious which comes from the Bible.

The Board asked about the Attorney General's guidance and whether the Dover test turns on motivation of the provider. Attorney Moore said you are looking at the motivation of the religious provider and says that recent cases support that. Assistant Town Attorney Jan Kendrick stated that Dover requires more than religious motivation, the focus is on what occurs on the property as is usual with zoning. She discussed the case Attorney Moore referenced and said the facts there were not the same as with the proposed shelter. In that case, the secular use at issue was an RV park at a bible camp. The court said that the mission of the camp was to evangelize the world and the RV park was to aid in a system of faith and worship. The court said the RV park was an accessory use because it furthered the mission of the camp by housing camp volunteers and campers. The issue before the Board is zoning and focus is on use or function of the property.

Board asked attorneys to confirm that it is not the provider's motivation but the actual use of the land. Attorney Creedon said each quote pulled from a case has to be kept in context of the preexisting inherently religious, which was a bible camp. And purpose of RV camp was to further mission of the bible camp. Board member again asked for confirmation that the issue is not limited to the motivation of the provider, but how the property is used. Assistant Town Attorney Jan Kenbdrick said the heart of dispute is whether religious motivations will transform a secular use into one that is protected under Dover. She said the facts in land court decision Attorney Moore talked about were different than this case and the land court case is not controlling precedent.

The Board reviewed the reason for the Building Commissioners decision to issue the building permit and all parties discussed whether the proposed shelter is exempt under the Dover Amendment. The Board asked about the discussions between the Building Commissioner and Catholic Charities which

led to the issuance of the building permit. Building Commissioner Brian Florence spoke and stated Catholic Charities is a religious use and the building purpose is to house the homeless. He stated the use qualifies under the Dover Amendment. He also stated that residential use is allowed in the Highway Business Zoning District and stated the religious use is the dominate use.

The Board asked Attorney Cox to clarify that the primary purpose of the use is the provision of emergency overnight shelter. Attorney Cox said the primary purpose is the expression of faith. The Board discussed that the shelter was pursuant to a contract with the state. Attorney Cox confirmed that shelter operations are not different than a shelter operated by secular nonprofit. Only allowed here because of motivations of Catholic Charities. Attorney Creedon said there must be an inherently religious use somewhere on the property for Dover to apply.

Building Commissioner Florence said he found Catholic Charities provides shelter and it is a form of faith and worship. Building's primary purpose is to shelter the homeless. And he had to find Dover applies because Catholic Charities says they provide shelter for homeless as part of their faith and mission. He reviewed opinions of Town Attorney, HAC, and Attorney General. He said he does not have luxury to review the opinions. He must make determination based on fact and law. He claims shelter could be allowed by right anyway because shelter is residential use. He said this is congregate use and congregate use is protected too. But because applicant applied under Dover Amendment that is what he considered.

The Chair asked for public comment. A significant number of individuals offered public comment both for and against the issuance of the permit.

The Board reviewed the written public comments received from the public.

The Board returned to questions for the attorneys. The Board asked Attorney Creedon why the second prong is not met if he agrees the first prong is met. Attorney Creedon said there are two ways to satisfy the second prong. Either articulate religious use or is collocated on property with a use that articulates religious use. He says because the shelter is operated in secular manner it can't be primarily and dominantly religious. Dover can only apply to the shelter if it is accessory to religious use. The first prong can't be enough because it would render the test meaningless. Attorney Moore says once you have accepted use has goal that is religious, then Dover is met. Attorney Moore says Catholic faith mandates that they provide shelter and that is why Dover applies to secular shelter. Board contemplates how something done under the supervision of state can be religious where Catholic Charities has obligations to state under contract.

The Board questioned why Housing Assistance Corporation has been entity pursuing funding, applying for building permit, and overseeing construction. Attorney Cox said that is not an unusual practice.

Board began deliberations. Board members debated whether religious motivations turn a secular shelter into a Dover protected use. The Chair noted that Catholic Charities must follow specific state guidelines. The Board acknowledged that there is no religious activity and continued to debate whether primary and dominate activity on property has to be religious or whether Dover applies based on Catholic Charities' religious beliefs. Attorney Moore says it violates the first amendment to require a religious entity to do religious activity to qualify. Attorney Creedon says the case Attorney Moore referenced is a tax case and does not apply. Attorney Moore said Dover does not require active practice of religion. She says operation of the shelter is worship. Board says primary and dominant purpose of the shelter is to provide shelter for the homeless.

The Board closed the public hearing. Board members discussed whether religious faith or motivation is to qualify for Dover protection. There needs to be overt religious act, and it can't be only that the

motivation is religious. The focus is on use of property. Member Herbert Bodensiek disagreed and he believes Dover applies because the motivation for the emergency overnight shelter is religious.

**DECISION**

The Board voted to overrule the building commissioner's issuance of Building Permit BLDC-25-316.

**AYE: Jake Dewey, Paul Pinard, Aaron Webb, and Manny Alves**
**NAY: Herbert Bodensiek**

**ORDERED**

That the Building Commissioner's issuance of Building Permit BLDC-25-316 is overruled.

Jacob Dewey, Chair

8-4-2026
Date Signed

I, Ann Quirk, Clerk of the Town of Barnstable, Barnstable County, Massachusetts, hereby certify that twenty (20) days have elapsed since the Zoning Board of Appeals filed this decision and that no appeal of the decision has been filed in the office of the Town Clerk.

Signed and sealed this ________ day of __________________ under the pains and penalties of perjury.

Ann Quirk, Town Clerk